**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | |
|---|---|
| CENTRO ESPIRITA BENEFICENTE UNIAO DO VEGETAL IN THE UNITED STATES; JOSE CARLOS GARCIA; and DANIELLE HOUNSELL SILVA GARCIA,<br><br>            Plaintiffs,<br>     v.<br><br>ALEJANDRO MAYORKAS, U.S. Secretary of Homeland Security; UR M. JADDOU, Director of U.S. Citizenship and Immigration Services; and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, an agency of the United States,<br><br>            Defendants. | Case No.: 1:23-cv-929 |

**COMPLAINT FOR WRIT OF MANDAMUS AND DECLARATORY JUDGMENT**

1. Plaintiff Jose Carlos Garcia ("Plaintiff Garcia") is the General Representative Mestre of Plaintiff Centro Espirita Beneficente Uniao do Vegetal in the United States, a New Mexico non-profit corporation ("Plaintiff UDV") a 501(c)3 non-profit religious organization with branches in the United States and around the world. Plaintiff UDV serves as the umbrella administrative organization for the União do Vegetal nationally, overseeing the religious and administrative work of nine congregations in the United States.

2. The General Representative Mestre position is the highest religious leadership role in the organization and its duties involve presiding over the spiritual and temporal administration of UDV around the globe and serving as the maximum authority in all matters touching upon the UDV's religious mission. In this demanding role, Plaintiff Garcia attends high level meetings of the church, officiates religious services, is involved in strategic planning for the organization,

1

counsels and mentors lower-level leaders and presidents of the various regions around the world, meets with members, etc. UDV originated in Brazil and its administrative headquarters are in Brasilia, Brazil, necessitating frequent travel by Plaintiff Garcia back and forth between the USA and Brazil. Plaintiff Garcia has a commitment to be at important, top-level meetings with the General Leadership of the UDV in Brasilia, Brazil on December 5, 2023 as well as a commitment to direct the religious services at the UDV's center in Florida on December 24, 2023 in commemoration of Christmas, one of the most important high holy days observed by members of the UDV religion. He subsequently has a commitment to be in Brasilia, Brazil on January 6, 2024 for a solemn religious ceremony in which he will transmit the religious office of General Representative Mestre to his successor, Mestre Jair Gabriel da Costa, the son of the UDV's found Jose Gabriel da Costa, Mestre Gabriel. It is of essential importance to Plaintiffs' free exercise of religion that he be able to travel freely to attend to these essential religious activities.

3.     Plaintiff Garcia and his spouse Plaintiff Danielle Hounsell Silva Garcia ("Plaintiff Hounsell Silva Garcia") have been Lawful Permanent Residents of the USA since December of 2019. Since Plaintiff Garcia was elected to the position of General Representative Mestre in January of 2020, Plaintiff Garcia and Plaintiff Hounsell Silva Garcia have been required to travel to Brazil frequently to fulfill Plaintiff Garcia's obligations and duties as the head leader of UDV. Despite their frequent travel outside the USA, they have never left the USA for more than 6 months at a time and they have maintained their residency in the USA through frequent trips back to Florida, paying taxes, owning property, having drivers' licenses in the USA, supporting their son who is in college in the USA, etc.

4.      Plaintiff Garcia and Plaintiff Hounsell Silva Garcia filed I-131 petitions for reentry permits on January 4, 2023 to both overcome any allegations of abandonment and permit them to reenter the United States after an anticipated long trip abroad. The receipt number for Plaintiff Garcia's I-131 Petition is LIN2390077963 and the receipt number for Plaintiff Hounsell Silva Garcia's I-131 Petition is LIN2390077962. These petitions are still pending to this date.

5.      Recently, United States Customs and Border Protection have been unnecessarily confronting and delaying Plaintiff Garcia and Plaintiff Hounsell Silva Garcia's entry to the United States at the airport and demanding to see reentry permits, despite their explanations about Plaintiff Garcia's religious duties abroad and the pending I-131 Applications for Travel Documents. At Plaintiff Garcia's most recent entry in Orlando, FL on October 2, 2023, he was told by Customs and Border Protection that if he did not have the I-131 approval in hand before his next entry, that he would be denied entry to the United States and his lawful permanent resident status would be jeopardized.

6.      Plaintiffs respectfully submit this complaint to compel Defendants and those acting under them to take all appropriate action to adjudicate Plaintiffs' applications for reentry permits (Form I-131, Application for Travel Document) without further delay and in any event no later than November 29, 2023.

7.      Plaintiffs' I-131 applications remain within the jurisdiction of Defendants, who have improperly withheld action on the applications for an unreasonable period of time, to the detriment of Plaintiffs and Plaintiffs' right to the free exercise of religion. This unreasonable delay is preventing Plaintiffs from conducting their religious duties and obligations as described above.

**JURISDICTION AND VENUE**

8. This is a civil action brought pursuant to 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."). Jurisdiction is further conferred by 8 U.S.C. § 1329 (jurisdiction of the district courts) and 28 U.S.C. § 1331 (federal subject matter jurisdiction).

9. Jurisdiction is also conferred pursuant to 5 U.S.C. §§ 555(b) and 702, the Administrative Procedure Act ("APA"). The APA requires USCIS to carry out its duties within a reasonable time. 5 U.S.C. § 555(b) provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency *shall* proceed to conclude a matter presented to it." (Emphasis added). USCIS is subject to 5 U.S.C. § 555(b). *See Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006) (finding that the district court has jurisdiction under the APA, in conjunction with 28 U.S.C. § 1331, to review plaintiff's complaint for declaratory and injunctive relief against a federal agency). When the statute is silent as to an actual deadline to adjudicate an application or petition, the agency is subject to the general reasonableness requirements of the APA. *See Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir.1999).

10. 8 U.S.C. § 1252, does not deprive this Court of jurisdiction. 8 U.S.C. § 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals in accordance with this section, shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act[.]" As the present action does not seek review of a removal order, but is simply an action to compel USCIS to adjudicate Plaintiffs' unreasonably delayed applications, this Court retains original mandamus jurisdiction under 28 U.S.C. § 1361.

11. Furthermore, 8 U.S.C. § 1252(a)(2)(B) provides that no court shall have jurisdiction to review either (i) "any judgment regarding the granting of" various forms of relief from removal, or (ii) "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified … to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]" Because adjudication of a properly filed reentry permit application (I-131, Application for Travel Document) is neither a judgment regarding the granting of relief from removal nor a decision or action that is specified to be in the discretion of the Attorney General or the Secretary of Homeland Security, the Court retains original mandamus jurisdiction over this claim. *See Kim v. USCIS,* 551 F.Supp.2d 1258 (D. Colo. 2008); *Liu v. Novak*, 509 F. Supp. 2d 1, 5 (D.D.C. 2007) (holding that "the Court does have jurisdiction over plaintiff's APA claim that defendants have unreasonably delayed adjudicating his application" for adjustment of status); *Villa v. U.S. Dep't of Homeland Sec.*, 607 F. Supp. 2d 359, 366 (N.D.N.Y. 2009) ("[T]he Defendant has the discretionary power to grant or deny applications, but it does not have the discretion as to whether or not to decide at all."); *Aslam v. Mukasey*, 531 F. Supp. 2d 736, 739 (E.D. Va. 2008) ("[T]he Court retains jurisdiction under the APA to determine whether the Secretary [of Homeland Security] has unlawfully delayed or withheld final adjudication of a status adjustment application."). Numerous federal district courts have ruled that adjudication of properly filed immigration petitions, including completion of all necessary background checks, is a purely ministerial, non-discretionary act which the Government is under obligation to perform in a timely manner. *See, e.g.*, *Shahid Khan v. Scharfen*, 2009 U.S. Dist. LEXIS 28948 (N.D. Cal. Apr. 6, 2009); *Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540 (S.D.N.Y. 2008); *Jones v. Gonzales,* Slip Copy, 2007 U.S. Dist. LEXIS 45012 (S.D. Fla. June 21, 2007)

("[N]o agency responsible for resolving matters of public interest should be free to let those matters pend in perpetuity; otherwise would be to relieve the agency of its Congressionally-mandated duty to the public.").

12. As set forth below, the delay in processing Plaintiffs' properly filed applications for reentry permits is unreasonable.

13. Venue is proper in New Mexico pursuant to 28 U.S.C. §1391I(1)(C). Plaintiffs sue the Defendants in their official capacities as officers and employees of the United States. Plaintiff UDV is a New Mexico non-profit corporation. Plaintiff Garcia works in New Mexico intermittently for Plaintiff UDV.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. No exhaustion requirement applies to Plaintiffs' complaint for a Writ of Mandamus. Plaintiffs are owed a duty – the adjudication of the properly filed applications for reentry permits (Form I-131, Application for Travel Document), which have been duly filed with USCIS. Defendants have unreasonably delayed and failed to adjudicate the applications for 10 months. Plaintiffs have no other adequate remedy available for the harm they seek to redress – the failure of USCIS to process their applications in a timely manner.

## PARTIES

15. Plaintiff Centro Espirita Beneficente Uniao do Vegetal in the United States (UDV) is a bona fide religious organization in the State of New Mexico that employs Plaintiff Garcia. Plaintiff UDV's religious activities are being thwarted due to the government's failure to adjudicate Plaintiff Garcia and Plaintiff Hounsell Silva Garcia's I-131, Applications for Travel Documents.

16. Plaintiff Garcia is a citizen of Brazil and a lawful permanent resident of the United States. Plaintiff Garcia is married to Plaintiff Hounsell Silva Garcia. Plaintiff Garcia is employed by Plaintiff Centro Espirita Beneficente Uniao do Vegetal in the head leadership role for the organization.

17. Plaintiff Hounsell Silva Garcia is a citizen of Brazil and a lawful permanent resident of the United States. Plaintiff Garcia is married to Plaintiff Garcia.

18. Defendant Alejandro Mayorkas is the Secretary of the Department of Homeland Security (DHS), and as such is charged by statute with the administration and enforcement of the Immigration and Nationality Act and all other laws relating to the immigration and naturalization of aliens. He is sued in his official capacity only.

19. Defendant Ur M. Jaddou is the Director of United States Citizenship and Immigration Services (USCIS) of the DHS and as such is charged with the administration and enforcement of the Immigration and Nationality Act and all other laws relating to the immigration and naturalization of aliens pursuant to a delegation of authority from the Secretary of Homeland Security of the United States under 8 U.S.C. § 1103(a). She is sued in her official capacity only.

20. United States Citizenship and Immigration Services (USCIS) is an agency of the United States in charge of reviewing and deciding benefit applications including applications for reentry permits such as Plaintiffs'.

21. Defendants are in charge of the processing and adjudication of Form I-131, Application for Travel Document. They are sued in their official capacity only.

## **LEGAL FRAMEWORK**

Administrative Procedure Act ("APA"):

22. The APA provides that, "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). To ensure that agencies comply with that provision, the APA specifies that a reviewing court "shall compel agency action unlawfully withheld or unreasonably delayed." Id. § 706(1).

23. 8 U.S.C. § 1571(b) states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." Any delay on processing an immigration benefit application, such as an application for a reentry permit (Form I-131, Application for Travel Document) may be presumed to be unreasonable if the delay is longer than 180 days.

Reentry Permits:

24. Lawful permanent residents can request reentry permits using Form I-131, Application for Travel Document. A reentry permit allows a permanent resident to establish that they did not intend to abandon their permanent resident status and allows the permanent resident to apply for admission to the United States after traveling abroad for up to 2 years without having to obtain a returning resident visa. 8 USC § 1203; 8 CFR § 223.

RFRA

25. The Religious Freedom and Restoration Act of 1994 (RFRA) was passed by Congress in order to protect individuals' and organizations' sincerely held religious beliefs from government interference and burden. It provides in relevant part:

Free Exercise of religion protected

(a) In general. Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.
(b) Exception. Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person –
    (1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest

26. A prima facie violation of RFRA is established by showing 1) a substantial burdening of, 2) a sincere, 3) exercise of religion. Once a prima facie RFRA violation is shown, the burden shifts to the government to show that it is advancing 1) a compelling interest and that this is the 2) least restrictive means by which to achieve that interest. 42 U.S.C. § 2000bb-1(b).

27. RFRA permeates and amends the entirety of federal law, including laws of general application such as the Immigration and Nationality Act. 42 U.S.C. § 2000bb-3(a) ("This Act applies to all Federal law ... whether statutory or otherwise, and whether adopted before or after November 16, 1993.").

28. Although RFRA is statutory, it protects First Amendment free-exercise rights. It is well established that "the loss of First Amendment Freedoms, even if temporary, 'unquestionably constitutes irreparable injury.'" *Eternal Word Television Network, Inc. v. Secretary, U.S. Dept. of Health and Human Services*, 756 F.3d 1339, 1350 (11th Cir. 2014) (Quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

29. The First Amendment protects the free exercise of religion and prohibits the establishment of any religion by the US government. U.S. Const. amend. I. The First Amendment prohibits government involvement in ecclesiastical decisions. Courts have held that the choice of a minister and the relationship the church has with its minister (employment, financial or otherwise) is *per se* religious exercise. In *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171, 188 (2012), the Supreme Court stated:

> The members of a religious group put their faith in the hands of their ministers. Requiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so, intrudes upon more than a mere employment decision. Such action interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs. By

> imposing an unwanted minister, the state infringes the Free Exercise Clause, which protects a religious group's right to shape its own faith and mission through its appointments. According the state the power to determine which individuals will minister to the faithful also violates the Establishment Clause, which prohibits government involvement in such ecclesiastical decisions.

*See also*, *McClure v. Salvation Army*, 460 F.2d 553, 559-560, (5th Cir. 1972) ("The relationship between an organized church and its ministers is its lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern."); *Petruska v. Gannon University*, 462 F.3d 294, 306 (3rd Cir. 2006) ("Unlike an individual who can speak on her own behalf, however, the church as an institution must retain the corollary right to select its voice. A minister is not merely an employee of the church; she is the embodiment of its message. A minister serves as the church's public representative, its ambassador, and its voice to the faithful. Accordingly, the process of selecting a minister is *per se* a religious exercise."); *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648 (10th Cir. 2002).

30. RFRA provides a remedy to those whose religious freedom is burdened by government, including Plaintiffs in this matter. The remedy is to request a specific exemption from the burdensome regulation. See page 72283 of volume 73 of the Federal Register:

> An organization or individual who believes that the RFRA may require specific relief from any provision of this regulation may assert such a claim at the time they petition for benefits under the regulation.

## FACTUAL AND PROCEDURAL BACKGROUND

31. Plaintiff Garcia and Plaintiff Hounsell Silva Garcia, a married couple, became permanent residents on December 23, 2019.

32. Plaintiff Garcia is currently the General Representative Mestre of O Centro Espirita Beneficente Uniao do Vegetal (UDV), a bona fide religious organization in the USA with

branches around the world. General Representative Mestre is a ministerial position serving as the highest religious leader of UDV (similar to the role of the Pope for the Catholic Church). Mr. Garcia was elected to this position on January 6, 2021, for a three-year term.

33. Due to the position requirements and because the church headquarters is in Brasilia, Brazil, Plaintiff Garcia must travel internationally frequently and spend considerable time abroad until the end of his term as General Representative Mestre.

34. Because Plaintiff Garcia is conducting religious work abroad at the direction of UDV, any interference by the US government with his travel abroad is a substantial burdening of UDV's religious exercise in running its international church and a substantial burdening of Plaintiff Garcia's sincerely held religious duties.

35. Despite his obligations abroad, Plaintiff Garcia and Plaintiff Hounsell Silva Garcia, have never spent more than 6 consecutive months outside of the USA since they became permanent residents and have maintained their residency in the USA. Plaintiff Garcia and Plaintiff Hounsell Silva Garcia own property in the USA, pay taxes in the USA, have a son attending college in Florida, and plan to return full-time to Florida after Plaintiff Garcia's term as General Representative Mestre ends in January of 2024. They have not abandoned their residency.

36. In December of 2022, Plaintiff Garcia and Plaintiff Hounsell Silva Garcia returned to the USA after a less-than-6 month trip abroad. At entry, they were asked several questions about their time abroad and were given the impression that United States Customs and Border Protection was mistakenly concerned about abandonment of permanent residency due to their frequent international travel.

37. Plaintiff Garcia and Plaintiff Hounsell Silva Garcia promptly filed I-131 applications on January 4, 2023, to request reentry after a prospective long trip abroad to conduct religious work and to overcome any presumption of abandonment of their US residency.

38. Mr. Garcia also filed an N-470, Application to Preserve Residence for Naturalization Purposes on January 18, 2023, to preserve his and his wife's US residency while he is engaged in religious work in Brazil, which was approved on May 10, 2023.

39. In October of 2023, Plaintiff Garcia again returned to the USA after a less-than-6-month trip abroad. This time, Customs and Border Protection detained Plaintiff Garcia for additional questioning and despite Plaintiff Garcia's explanation about his required travel for religious work, the pending I-131, and the approved N-470, Customs and Border Protection told him that they would not allow him to reenter the USA after his next trip abroad without an approved I-131.

40. Plaintiff Garcia must travel between Brazil and the USA in order to be present in Brasilia Brazil on December 4-5, 2023, to be present in Gainesville, Florida on December 24, 2023 and then be present in Brasilia Brazil on January 6, 2024 to finish his term as General Representative Mestre, which ends on January 6 of 2024

41. Plaintiffs' I-131 Petitions are still pending to this date. If they are not approved quickly, Plaintiffs' may be unable to return to the USA to resume their life here. In addition, if not approved quickly, Plaintiff Garcia may be barred from entry into the USA to fulfill his religious duties here, thus substantially burdening both his own and UDV's sincere exercise of religion. UDV has the right to select a minister of their choosing and followed the proper channels to sponsor Mr. Garcia for an immigrant visa, which was approved years ago. Customs

and Border Protection's actions are threatening depravation of Plaintiff UDV's minister in the USA.

42. Plaintiffs have suffered prejudice from the unreasonable delay in adjudicating their I-131 petitions. Plaintiff Garcia and Plaintiff Hounsell Silva Garcia must travel to Brazil to conduct their religious work but are now terrified of traveling between the USA and Brazil because they might not be allowed to enter the country the next time they need to return to the USA. In addition, Plaintiff Garcia is being forced to make the impossible choice between fulfilling his sincerely held religious obligations in both Brazil and the USA as the leader of UDV or avoiding travel between the USA and Brazil until his I-131 is approved to protect his residency status. Furthermore, Plaintiff UDV is in limbo, not knowing when or if their leader will be able to travel between the USA and Brazil, whether he will be able to show up for conferences, services, meetings and other obligations, and if he will be able to fulfill his religious duties or not.

43. The delay on Plaintiffs' I-131 petitions is disrupting Plaintiff Garcia's and Plaintiff UDV's religious work and is having a significant effect on Plaintiffs mental health and wellbeing. Plaintiff Garcia and Plaintiff Hounsell Silva Garcia are suffering from constant stress and anxiety of not knowing the outcome of their reentry permit cases.

## CAUSES OF ACTION

## COUNT ONE

## DECLARATORY JUDGMENT

44. The allegations contained in paragraphs 1 through 43 above are repeated and re-alleged as though fully set forth herein.

45. Pursuant to 28 U.S.C. § 2201 et seq. the Court may declare the rights of the parties and such declaration shall have the force and effect of a final judgment or decree.

46. Defendants in this case have failed to reach a decision on Plaintiffs' applications for reentry permits (Form I-131, Application for Travel Document). This failure to act is against the law, has caused, and continues to cause harm to Plaintiffs. Therefore issuance of a declaratory judgment that Defendants' lack of action is against the law and violates the APA is warranted.

## COUNT TWO

## VIOLATION OF 5 U.S.C. §§ 702, 704, 706 (APA CLAIMS)

47. The allegations contained in paragraphs 1 through 43 above are repeated and re-alleged as though fully set forth herein.

48. Plaintiffs have suffered a "legal wrong" or have been "adversely affected or aggrieved" by agency action. 5 U.S.C. & 702. Plaintiffs are aggrieved by agency action for which there is no other adequate remedy in court. 5 U.S.C. § 704.

49. The inaction is arbitrary, capricious, and exceeds Defendants' statutory authority. 5 U.S.C. § 706(c)(2). The delays are a violation of the APA which mandates that a decision be made in a timely manner.

## COUNT THREE

## RELIEF UNDER THE MANDAMUS ACT

50. The allegations contained in paragraphs 1 through 43 above are repeated and re-alleged as though fully set forth herein.

51. Plaintiffs have a claim for mandamus relief under 28 U.S.C. § 1361 which provides the authority to compel the agency to perform a duty owed to the Plaintiffs. Defendants have failed to properly adjudicate Plaintiffs' applications for reentry permits.

52. A mandamus plaintiff must demonstrate that: (i) he or she has a clear right to the relief requested; (ii) the defendant has a clear duty to perform the act in question; and (iii) no other adequate remedy is available. *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002); *Citizens for Ethics and Responsibility in Wash. v. Cheney*, 593 F. Supp. 2d 194, 219 (D.D.C. 2009); see also *Liu*, 509 F. Supp. 2d at 10 (holding, in mandamus suit alleging unreasonable agency delay, that "'the statutory duty involved [in such cases] … does not specify what course of action shall be taken. Rather, regardless of what course it chooses, the agency is under a duty not to delay unreasonably in making that choice'") (quoting *Sierra Club v. Thomas*, 828 F.3d 783, 794 (D.C. Cir. 1987)); *Aslam*, 531 F. Supp. 2d at 743 ("[T]he Court concludes that CIS has a legal obligation to adjudicate Aslam's petition within a reasonable period of time."). The Plaintiffs clearly meet all three of these criteria.

53. The Plaintiffs have fully complied with all of the statutory and regulatory requirements for seeking reentry permits, including submission of all necessary forms and supporting documents.

54. The Defendant USCIS has unreasonably failed to adjudicate the Plaintiffs' application to adjust status for 10 months, thereby depriving the Plaintiffs of their rights under 8 U.S.C. § 1255. Pursuant to 5 U.S.C. §§ 555(b) and 702 (APA), "[w]ith due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency shall proceed to conclude a matter presented to it." (Emphasis added).

55. The Defendants owe the Plaintiffs a duty to adjudicate the reentry permit applications, pursuant to the statute and its implementing regulations, and have unreasonably failed to perform that duty. See, e.g., *Northern States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754, 761 (D.C. Cir. 1997) (issuing writ of mandamus to preclude government defendant

15

"from excusing its own delay" in complying with a clear statutory obligation). The Plaintiffs have no alternative means to obtain adjudication of their reentry permit applications and their right to issuance of the writ is "clear and indisputable." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988); see also *Power*, 292 F.3d at 784; *Matter of Sealed Case*, 151 F.3d at 1063 (holding that mandamus is an appropriate remedy whenever a party demonstrates a clear right to have an action performed by a government official who refuses to act and that no other adequate means to attain the relief exist).

56. The Court's intervention is also appropriate because Defendants have failed to act within a reasonable period of time. See, e.g., *Sierra Club*, 828 F.3d at 794 (holding that "regardless of what course it chooses, the agency is under a duty not to delay unreasonably in making that choice"); *Northern States Power*, 128 F.3d at 760 ("Given DOE"s repeated attempts to excuse its delay … we find it appropriate to issue a writ of mandamus …."); *Liu*, 509 F. Supp. 2d at 9-10 (holding that the APA requires the government to act within a reasonable period of time). The Plaintiffs have already waited 10 months for adjudication of the pending application. This is an unacceptable and unreasonable delay.

57. The Plaintiffs are entitled to action on the long-pending reentry permit applications because an unreasonable amount of time has passed since the applications were filed. Defendants have failed to carry out the adjudicative and administrative functions delegated to them by law, to the ongoing harm and prejudice of the Plaintiffs.

58. Defendants' delay is without justification and has forced the Plaintiffs to resort to this Court for relief, and the Plaintiffs are entitled to attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(2).

## **COUNT FOUR**

## **VIOLATION OF 42 U.S.C. § 2000bb–1(a)–(b) (RFRA CLAIMS)**

59. The allegations contained in paragraphs 1 through 43 above are repeated and re-alleged as though fully set forth herein.

60. Plaintiffs have a claim for relief under 42 U.S.C. § 2000bb–1(a)–(b). Defendants have substantially burdened Plaintiffs' exercise of religion and failed to meet either of the exceptions provided by RFRA.

61. Congress has expressly legislated that plaintiffs may sue federal agencies under RFRA, "a person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain relief against a government" 42 U.S.C. § 2000bb-1(c). Additionally, RFRA applies to "all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993." 42 U.S.C. § 2000bb-3(a).

62. In this matter, Defendants have caused substantial burdening of Plaintiffs' sincere exercise of religion by failing to adjudicate Mr. Garcia's I-131 in a timely manner and threatening to refuse Mr. Garcia's entry on future trips to the USA, despite the fact that he has faithfully maintained his US residency. The right to choose a minister and direct their activities is per se a religious exercise. As a result, Plaintiffs are entitled to relief under RFRA.

## **PRAYER FOR RELIEF**

WHEREFORE, in view of the arguments and authority noted herein, Plaintiff prays that the Court grant the following relief:

A.  Assume jurisdiction over the matter;

B.  Issue a declaratory judgment holding that Defendants' unreasonable delay in adjudicating the reentry permit applications is unlawful and contrary to law.

  C.  Order Defendants and those working under them to immediately adjudicate the pending applications for reentry permits no later than November 29, 2023.

  D.  Award reasonable attorney fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412 and pursuant to 42 U.S.C. § 1988(b), and

  E.  Grant any and all further relief this Court deems just and proper.

Dated this 20th day of October 2023.

/s/ Julia Jagow

Julia Jagow
Attorney for Plaintiffs
Vrapi Weeks, P.A.
5931 Jefferson St.. NE, Suite A
Albuquerque, NM 87109
Phone: (505) 352-6660
Fax: (505) 872-6120
julia@vrapiweeks.com